UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| FRANCISCO GONZÁLEZ, AS BENEFICIARY OF THE ROYALTY FUND MECHANIZED CARGO LOCAL 1575; AND FRANCISCO GONZÁLEZ AND RAFAEL CUEVAS KUINLAM, IN THEIR CAPACITIES AS TRUSTEES AND FIDUCIARIES OF ROYALTY FUND MECHANIZED CARGO LOCAL 1575, A WELFARE FUND, <br><br> Plaintiffs, <br><br> v. <br><br> UBS FINANCIAL SERVICES, INC. <br><br> Defendant. | CIVIL ACTION <br> NO. 19-01086-WGY |

YOUNG, D.J.[1]                                              June 12, 2023

**ORDER**

As this Court has previously ruled in a different case in this district: "[a]rbitration is to justice as a metronome is to a Stradivarius." UBS Financial Services Inc. v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 419 F. Supp. 3d 266, 285 (D.P.R. 2019). This Court has consistently criticized the use of forced consumer arbitration clauses of the type used here. See e.g. id. (citing Consumer Finance Protection Bureau, Arbitration Study, Report to Congress,

---

[1] Of the District of Massachusetts, sitting by designation.

pursuant to Dodd-Frank Wall Street Reform and Consumer Protection act § 1028(a) (March 2015) (studying consumer financial services arbitration clauses, but not securities arbitration)); CellInfo, LLC v. Am. Tower Corp., 506 F. Supp. 3d 61, 63-64 (D. Mass. 2020); CellInfo, LLC v. Am. Tower Corp., 352 F. Supp. 3d 127, 131 n. 3 (D. Mass. 2018). Indeed, "Congress enacted the Federal Arbitration Act (FAA) in 1925 'to enable merchants of roughly equal bargaining power to enter into binding agreements to arbitrate *commercial* disputes. . . The Act was not designed to govern contracts in which one of the parties characteristically has little bargaining power." Lamps Plus, Inc. v. Varela, 139 S.Ct. 1407 1420 (Apr. 24, 2019) (Ginsberg, J., dissenting) (citations omitted) (italics in original). See Kristen M. Blankley, Standing on Its Own Shoulders: The Supreme Court's Statutory Interpretation of the Federal Arbitration Act, 55 Akron L. Rev. 101 (2021).

Regardless of this criticism, arbitration is viewed under federal law as a creature of state-law consent, and this Court does not hesitate to compel parties to arbitrate when those parties agree to do so. See Mendez-Campoamor v. UBS Financial Services of Puerto Rico, Inc., Civ No. 3:18-cv-01656-WGY, October 23, 2019 Order, ECF No. 43 (ordering consumer plaintiffs to arbitration with UBS Financial Services of Puerto Rico, Inc.).

[2]

In fact, in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829 (1974), it has done so already, in allowing, in part, the Defendant UBS Financial Services, Inc.'s ("UBS") Motion for Summary Judgment and to Compel Arbitration (ECF No. 35) to the extent that Francisco González ("González") and Rafael Cuevas Kuinlam in their capacities as Trustees of The Royalty Fund Mechanized Cargo Local 1575, a Welfare Fund, were ordered to proceed to arbitration forthwith.[2] See Order, ECF No. 50.

Before the Court here is whether González's separate claim as a beneficiary of the Royalty Fund against UBS as an ERISA fiduciary must be arbitrated. See 29 U.S.C. § 1132(a)(2) and (3); Compl. ¶1. Under ERISA, Section 1132 provides in pertinent part:

> A civil action may be brought--
> . . .
> (2) by the Secretary, **or by a participant, beneficiary** or fiduciary **for appropriate relief under section 1109 of this title;**
> (3) by a **participant, beneficiary,** or fiduciary (A) **to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;**

---

[2] The Court observes that these parties had not yet proceeded to arbitration at the time of the hearing. The Court trusts these parties to proceed to arbitration forthwith.

[3]

29 U.S.C. § 1132(a) (emphasis added).  In turn, 29 U.S.C. § 1109(a), provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable **to make good to such plan** any losses **to the plan** resulting from each such breach, and **to restore to such plan** any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

Id. (emphasis added).  Breach of fiduciary duty claims brought under Section 1109(a) are, of course, brought for recovery on behalf of an ERISA Plan.  See Moitoso v. FMR LLC, 410 F. Supp. 3d 320, 327 (D. Mass. 2019) (ruling that a "recovery for a violation of § [1109] inures to the benefit of the plan as a whole.") (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985)); see LaRue v. DeWolff, Boberg & Associates, Inc., 552 U.S. 248, 253 (2008).  In addition to its primary arguments, at the hearing and in supplemental briefing, UBS argues that because the Royalty Fund directly agreed to arbitrate with UBS, a beneficiary cannot end-around arbitration by seeking the same relief on its individual behalf.  UBS Resp. Pl.'s Mot. Regarding Case Law Cited Def. During Hr'g ("UBS Resp.") ¶¶ 5-8.

The cases cited by UBS at the hearing and in supplemental briefing, such as Dorman v. Charles Schwab Corp., 780 Fed.

[4]

App'x. 510 (9th Cir. 2019) (an unpublished decision of no precedential value here under Ninth Circuit Rules)[3], and Holmes v. Baptist Health South Florida, Inc., 2022 WL 180638 (S.D. Fla. 2022), an unpublished Florida district court decision -- not binding on this court -- are not directly on point, and are factually distinguishable because in those cases the arbitration agreement was part of the Plan documents, as opposed to the third-party, garden variety account agreements present here.

Other cases cited by UBS, such as Munro v. Univ. of S. Cal., 896 F.3d 1088 (9th Cir. 2018); Ramos v. Natures Image, Inc., 2020 WL 2404902, at *6 (C.D. Cal. Feb. 19, 2020); and Simon v. Hartford Life, Inc., 546 F.3d 661, 665 (2008), are close, but did not address the exact legal issue here.

To be sure, UBS's argument has some logical appeal -- at least from the perspective of efficiency -- but it conflates the legal issue of who statutorily may sue and seek the remedies under ERISA on the one hand, with the arbitration of those

---

[3] Although citation to Dorman is not limited, see Fed. Rule of Appellate Procedure 32.1(a), the Ninth Circuit Local Rule 36-3(a) provides that it is not precedent:

> Not Precedent. Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.

U.S.Ct. of App. 9th Cir. Rule 36-3. Accordingly, inasmuch as the Ninth Circuit does not regard Dorman as precedent, for purposes of this action, this Court respectfully disregards it.

claims on the other: dragging along beneficiaries, participants, and by absurd logical extension, perhaps even the Secretary, into arbitration agreements of which they were unaware.[4]

As the Supreme Court has consistently held, and the First Circuit has echoed, "arbitration is a matter of consent, not coercion." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 681 (2010) (internal quotation marks omitted); Hogan v. SPAR Group, Inc., 914 F.3d 34, 38 (1st Cir. 2019) ("As this court has highlighted, 'arbitration is a matter of consent, not coercion.'") (quoting Stolt-Nielsen S.A., 559 U.S. at 681). There is no evidence in the record that the beneficiaries of the Royalty Fund agreed in any plan document with Royalty Fund, or any document with UBS, to arbitrate any claims with UBS. That the statutory ERISA claim may be assented both by the Royalty Fund and González (and the Secretary for that matter), and that relief if any will inure to the Royalty Fund, does not compel the conclusion as matter of law that González as a beneficiary is bound to arbitrate these ERISA claims. In the absence of

---

[4] González raises this issue as a rhetorical question, without briefing the issue. Mot. Regarding Suppl. Case Law 5 n. 3, ECF No. 63. UBS ignored this question. The Court has located no case where the Secretary has been bound to arbitrate a Section 1109 claim, and doubts that the Secretary of Labor is bound by an arbitration agreement contained in a Plan document or otherwise.

[6]

First Circuit guidance, the Court declines to adopt UBS's position on this issue.

As to UBS original contract-based arguments - concepts of estoppel and third party beneficiary[5] -- whether the law of Puerto Rico or New York is applied, the result is the same: González is not bound as a non-signatory to the arbitration agreement to arbitrate the ERISA claims at issue in this action.[6]

The First Circuit instructs "that, of course, as a general proposition, a contract [for arbitration] cannot bind a non-party." Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 9 (1st Cir. 2014). At the same time, "there are exceptions allowing non-signatories to compel arbitration" and that '[a] non-signatory may be bound by or acquire rights under an arbitration agreement under ordinary state-law principles of agency or contract.'" Id. at 9-10 (quoting Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 62 n. 2 (1st Cir. 2003). "In short, the FAA does not federalize contract law." Lamps Plus, Inc. v. Varela, 139 S.Ct. 1407, 131 (2019) (Kagan, J. dissenting).

---

[5] UBS originally brought an agency argument as to the Royalty Fund, that is not applicable to González as a beneficiary. Mot. Summ. J. 11-12.
[6] UBS concedes there is no difference between New York and Puerto Rico law, at least with respect to third party beneficiary law.

[7]

While there is, of course, case law on the legal standard of estoppel and third party beneficiary status, the legal standards do not significantly differ under Puerto Rico or New York law, and therefore the Court need not decide which law applies.  There is, however, surprisingly little case law on the particular issue presented here, as evidenced by the well-researched and presented submissions of the parties.

Operating in the vacuum of case law on the subject, the Court finds persuasive Comer v. Micor, Inc., 436 F.3d 1098 (9th Cir. 2006) which was presented with the identical issue as present here: "whether an ERISA-plan participant can be compelled to arbitrate an ERISA claim brought on behalf of the plan where the plan -- but not the participant -- has signed an arbitration agreement."  Id. at 1099.

In Comer, the plaintiff, Kevin Comer ("Comer"), was a participant in ERISA plans operated by Micor, Inc. ("Micor"). Id. at 1099.  Similar to the relationship between the Royalty Fund and UBS, the investment advisor, Smith Barney, Inc. ("Smith Barney") and the trustees of the Micor ERISA plans (the "Trustees") had entered into an account agreement that that contained a broad arbitration clause.  In turn, and similar to González, Comer was not a signatory to that account agreement.

Similar to González here, Comer sued Smith Barney under provisions of ERISA for breach of fiduciary duty on behalf of

[8]

the Micor ERISA Plans after it allegedly "concentrated the plans' assets" in certain investments. Id. at 1100. Similar to UBS, Smith Barney moved to compel arbitration of the case. Id. The district court denied the motion and Smith Barney appealed. Id.

Smith Barney argued, similar to UBS here, that Comer was bound to arbitrate as a non-signatory under theories of equitable estoppel and as a third-party beneficiary of the account agreement. The Ninth Circuit rejected both arguments. First, as to equitable estoppel, the Ninth Circuit held that

> Comer was simply a participant in trusts managed by others for his benefit. He did not seek to enforce the terms of the management agreements, nor otherwise to take advantage of them. Nor did he do so by bringing this lawsuit, which he bases entirely on ERISA, . . . Smith Barney's attempt to shoehorn Comer's status as a passive participant in the plans into his "knowing[] exploitation" of the investment management agreements fails.

Id. at 1102. The Court agrees with the Ninth Circuit's analysis that, similar to Comer, González is not estopped to avoid the arbitration clause between the Royalty Fund and UBS on a theory of estoppel. See Cabrera-Morales v. UBS Tr. Co. of Puerto Rico, 769 F. Supp. 2d 67, 72 (D.P.R. 2011) (Fuste, C.J.) ("We find . . . that neither the passive benefit Plaintiff derived from the Agreement nor his indirect attempts to enforce it amount to 'exploitation' necessary to trigger equitable estoppel. We,

[9]

therefore, find that equitable estoppel does not operate here to hold Plaintiff to the arbitration agreement between Defendant and UBS Financial.")[7]; <u>Trina Solar US, Inc.</u> v. <u>Jasmin Solar Pty Ltd</u>, 954 F.3d 567, 572 (2d Cir. 2020) (Under New York law, to be bound by an arbitration clause under a theory of direct benefits estoppel, "[t]he nonsignatory beneficiary must actually invoke the contract to obtain its benefit, or the contract must expressly provide the beneficiary with a benefit.").

The Ninth Circuit also dispensed with Smith Barney's third-party beneficiary arguments as well, holding:

> To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. . . Smith Barney has not produced any evidence that the signatories to the investment management agreements intended to give every beneficiary of the plans, such as Comer, the right to sue under the agreements. It follows that Comer cannot be bound to the terms of a contract he didn't sign and is not even entitled to enforce. A third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be bound to a contract it did not sign or otherwise assent to.

---

[7] The parties do not cite <u>Cabrera-Morales</u>, which is somewhat understandable  Indeed, <u>Cabrera-Morales</u> is a case in which a beneficiary sued a trustee and not UBS. The arguments regarding third-party beneficiary and equitable estoppel were made in the context of a trustee's motion to dismiss arguing that UBS was an indispensable party that could not be joined. The Court disagreed and denied the motion.

[10]

436 F.3d at 1102 (emphasis original). Again, the Court finds this reasoning persuasive and applicable here. See Catz v. Precision Glob. Consulting, 19 CIV. 7499 (ER), 2021 WL 1600097, at *12 (S.D.N.Y. Apr. 23, 2021) ("Although a party need not necessarily be specifically mentioned in a contract to be considered a third-party beneficiary, the parties' intention to benefit the third party nonetheless must be revealed on the face of the agreement."); Tuchman v. UBS Fin. Services Inc., 19CV09209 (LAK) (DF), 2020 WL 13561713, at *7 (S.D.N.Y. Nov. 9, 2020) (denying third party beneficiary status to mother of account holder where UBS successfully argued that arbitration provision and agreement similar to the one at bar did not intend to confer benefit), report and recommendation adopted, 19-CV-9209 (LAK), 2020 WL 13561711 (S.D.N.Y. Nov. 30, 2020); Cabrera-Morales, 769 F. Supp. 2d at 72 ("Defendant has not established that Plaintiff is entitled to sue under the Agreement, nor does Plaintiff claim any such right. Plaintiff's relationship to the Agreement, then, is different from that of a third-party beneficiary to a contract.")

Arbitration is a voluntary process, and often an unfair process to relatively unsophisticated consumers. On this record, that the statutory remedy inures to the benefit of an ERISA plan does not compel parties to arbitrate who are independently statutorily entitled to sue under ordinary state

[11]

contract law. To the extent that UBS desired to arbitrate with González as an ERISA beneficiary it needed to do so by contractual agreement; it did not do so here.

Accordingly, UBS's motion for summary judgment and to compel González as beneficiary of the Royalty Fund to arbitrate this action, and to stay this action (ECF No. 35), is DENIED. This action shall proceed in the ordinary course.

**SO ORDERED.**

*/s/ William G. Young*
WILLIAM G. YOUNG
DISTRICT JUDGE